Department of Transportation *v*. Cannon.

Argued November 9, 1971, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

Submitted in briefs by appellant—no appearance.

*Wallace A. Murray, Jr.,* with him *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellee.

OPINION BY JUDGE MENCER, January 6, 1972:

On January 23, 1971, on Interstate 76 in Montgomery County, Paul Cannon (appellee) was apprehended by a State Trooper for operating a motor vehicle while under the influence of intoxicating liquor, a violation of Section 1037 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §1037, and, after being so charged, refused to submit to a breathalyzer test as provided in the so-called "Implied Consent Law," Section 624.1(a) of the Code, 75 P.S. §624.1(a).[1] Having received a report of this refusal from the magistrate and officer involved, the Secretary of Transportation, under Section 624.1(a), suspended appellee's operator's license for six months, effective

---

[1] This section provides, *inter alia*: "Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: . . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. . . ."

March 29, 1971. In an opinion dated June 8, 1971, after granting a supersedeas on March 26, 1971 (appellee's license was restored March 30, 1971), the Court of Common Pleas of Chester County sustained appellee's appeal and reversed the Secretary's suspension. The Commonwealth has appealed to this court.

To explain the circumstances leading to and surrounding appellee's refusal to submit to the breathalyzer test, we adopt the first nine findings of fact made by the court below:

"1. On January 23, 1971, the appellant was apprehended by Dale F. Bonney, a trooper of the Pennsylvania State Police, after he had been observed traveling westbound on Interstate Route 76, the Schuylkill Expressway, in Montgomery County. During the trooper's observation of the appellant's operation of his automobile he noted that the automobile weaved from side to side upon the highway to such an extent that at times it was partially or completely upon the right-hand berm.

"2. The trooper brought appellant's automobile to a stop at a point one mile east of Ramp 1 at King of Prussia, and upon approaching the car asked him to alight from it. Upon being asked for his operator's and owner's cards the appellant produced them. When he first got out of the car he stumbled a little bit and the officer observed an odor of alcohol upon his breath. When speaking the appellant's speech was slow but not slurred. He said when asked that he had drunk three beers. The officer then asked the appellant to undergo tests of his sobriety to which the appellant agreed. In those tests the appellant had some difficulty in stooping to pick up a card from the ground, and when asked to close his eyes and extend his arms to the side and then to bring them together in front of his face, he was unable to do so.

"3. From all of this the officer concluded that the appellant was under the influence of intoxicating liquor and placed him under arrest and thereafter asked him to take the test prescribed by the section of The Vehicle Code cited above. The appellant asked what would happen if he wouldn't take the test, whereupon the officer explained the provisions of the law to him, after which he said he would take it.

"4. At or about this same time the officer read to the appellant from a card which contained the usual warnings given by an arresting officer to one being arrested which are now commonly known as the Miranda warnings.

"5. The appellant was taken to the Belmont Barracks of the Pennsylvania State Police where he was then asked to submit to the test. He refused to do this until he had talked to his lawyer. He was permitted to use the telephone and thereafter made three or four telephone calls.

"6. Since the appellant was unable to contact his lawyer at that time an hour to an hour and a half went by, after which the appellant was taken to a justice of the peace in West Conshohocken, at which place he arrived with the officer at about twenty-five minutes past midnight on the morning of January 24, 1971.

"7. Upon arrival at the office of the justice of the peace the appellant was again asked to submit to the test and again he refused, stating that he would not submit until he had contacted his lawyer. Just prior to his being asked to submit to the test and his refusal so to do, the justice of the peace advised him that this was the last opportunity he would have to take the test.

"8. From the time of his apprehension upon the highway at about 10:45 p.m. on January 23, 1971, until after his last refusal to submit to the test before the justice of the peace some two and one-half hours

later, the appellant had not been permitted to smoke. However, immediately following the voicing of his last refusal to submit to the test he was told that he might smoke and he did then light a cigarette.

"9.   Very shortly following his last refusal to submit to the test and after he had commenced to smoke a cigarette, he received a telephone call from his attorney.   After talking to his attorney he then indicated that he was willing to submit to the test as requested. At that time the justice of the peace informed the appellant that it was too late for him to submit to the test because he had commenced to smoke a cigarette."

Since the learned judge below filed his opinion in this case on June 8, 1971, he did not have the benefit of the recent case of *Morris Motor Vehicle Operator License Case*, 218 Pa. Superior Ct. 347, 280 A. 2d 658 (1971), which was filed on June 22, 1971.   Had Judge KURTZ had this Superior Court case before him, he no doubt would have decided this case differently.

In *Morris,* the Superior Court held that, since the action of the Secretary in suspending an operator's license for refusal to take a breathalyzer test is a civil proceeding, the licensee has no right to have an attorney present before deciding whether or not he will take the test, nor does he have a right, either constitutional or statutory, to be able to call an attorney before deciding whether or not to take the test.   We quote what then follows and find that it controls the instant case:

"Since no constitutional or statutory rights were abridged, it follows that appellee had no right to condition his taking the test upon being able to make a telephone call.   Admittedly, there was only a qualified refusal; however, §624.1(a) does not require that there be a flat refusal.   As stated in State v. Pandoli, [109 N. J. Super. 1, 262 A. 2d 41 (1970)] supra:

" 'In any event, the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and physiological processes tend to eliminate evidence of ingested alcohol in the system, *it is sensible to construe the statute to mean that anything substantially short of an unqualified unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.* . . . The occasion is not one for debate, maneuver or negotiation, but rather for a simple "yes" or "no" to the officer's request.' " (Emphasis added by the Superior Court)

The order of the court below is reversed, and the order of the Secretary of Transportation is reinstated. A reinstated suspension of six months shall be issued within thirty days.