Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant v. Charles John Korchak, Appellee.

Submitted on briefs March 2, 1983, to Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*Harold H. Cramer*, Assistant Counsel, with him *Ward T. Williams*, Chief Counsel, and *Jay C. Waldman*, General Counsel, for appellant.

*Mary Ann Rapp Durkin, Martin, Durkin & Martin*, for appellee.

OPINION BY JUDGE DOYLE, May 25, 1983.:

This is an appeal by the Department of Transportation, Bureau of Traffic Safety (Department), of an order of the Court of Common Pleas of Allegheny County which sustained the appeal of Charles John Korchak from the suspension of his license.

On June 7, 1980, Korchak was involved in a motor vehicle. accident and was arrested for driving under the influence. He subsequently received notice that his operating privileges were to be suspended for six months for violation of Section 1547 of the Vehicle Code (Code).[1] His appeal to the court of common pleas resulted in the order appealed here.

Before the court of common pleas, a police officer testified that Korchak was advised of his constitutional rights, was informed of his obligation under the Code to take a breathalyzer test, and was informed that refusal to take the test would result in the automatic suspension of his license. The officer testified

---

[1] 75 Pa. C. S. §1547.

that Korchak was repeatedly asked to take the test and repeatedly refused. Korchak's testimony verified that he had been advised that refusal to submit to the breathalyzer test would result in the suspension of his license. He testified, however, that he did not refuse. He testified that he was at all times ready and willing to take the test, but it was never administered.

Korchak also testified that, at the police station, he was taken into a room where, apparently, the breathalyzer test was to be administered, and was there given his *Miranda*[2] warnings. In response to the *Miranda* warnings he indicated that he did wish to speak with his attorney before making a statement. Korchak testified that he was immediately thereafter taken from the room to a cell without being given or asked to take the breathalyzer test.

From this evidence, the trial court concluded that Korchak did not refuse to take the breathalyzer test. In colloquy explaining the reasons for the decision[3] the court summarized:

> He's told to take the Breathalizer [sic] and read the Miranda rights, and he said, "I want my attorney." He has a right to have his attorney. Commonwealth cases ruled recently that the request for an attorney in response for a request for a Breathalizer [sic] test is a refusal and would be treated as such. In this case we have a complicating factor in that he's also being told at the same time that he has a right

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The court of common pleas did not file an opinion, but at the conclusion of the hearing announced its decision and analysis from the bench. Although the practice is permissible under Pa. R.A.P. 1925, it is not as helpful to a reviewing court as a separately drafted opinion summarizing the relevant facts and applicable law.

to an attorney. This could raise a sufficient element of confusion in defendant's mind, being told you're to be suspended, but you have a right to a lawyer, and it's reasonable for a defendant to ask for a lawyer rather than accede to the request for taking a Breathalizer [sic] test.

Our function, on review of the suspension of an operator's license is to determine whether the findings of the court of common pleas are supported by competent evidence, whether an error of law was committed, or whether a manifest abuse of discretion occurred. *White v. Commonwealth*, 59 Pa. Commonwealth Ct. 156, 428 A.2d 1044 (1981); *Bruno v. Department of Transportation*, 54 Pa. Commonwealth Ct. 353, 422 A.2d 217 (1980). The clear implication from the colloquy of the court is that the court found *as a matter of fact* that Korchak did refuse to take the breathalyzer test. Such a finding is amply supported by competent evidence in the record. The court concluded *as a matter of law*, however, that Korchak's request for an attorney did not constitute a knowing and conscious refusal.[4]

The decisions of this Court are clear that there is no right to have an attorney present during a breathalyzer test nor a right to contact a lawyer prior to responding to a request to take such a test. *Bureau of Traffic Safety v. Herman*, 49 Pa. Commonwealth Ct. 201, 410 A.2d 1296 (1980). We have also consistently held that a request for an attorney in re-

---

[4] The court ended the colloquy recited above as follows: "I will have to extend *the benefit of doubt* to say he didn't refuse to take the Breathalizer [sic] test when he was asked to do so." (emphasis added). This implies the legal conclusion that refusal was due to some confusion, not the fact that there was no refusal.

sponse to an officer's request to take a breathalyzer test constitutes a refusal. *Weitzel Appeal,* 41 Pa. Commonwealth Ct. 235, 400 A.2d 646 (1979), in addition, in *Ford v. Department of Transportation, Director of Bureau of Traffic Safety,* 45 Pa. Commonwealth Ct. 268, 406 A.2d 240 (1979), we rejected the argument that confusion concerning the *Miranda* rights and the obligation to submit to a breathalyzer test justified a refusal to take the test. We noted:

> Ford also argues that, after he was read the Miranda warning and counseled on his right to remain silent, he was unable to decide effectively whether or not he was required to take the breathalyzer test. The record, however, does not support his contention that this was a reason for refusing the test. Even if it were a reason, claimant would not be released from the effects of his refusal because he was specifically warned of the consequences. (Footnote omitted.)

*Id.* at 270, 406 A.2d at 241.

The record in the case at bar shows that Korchak admitted that he was specifically informed of his obligation to submit to a breathalyzer test and of the consequences of a refusal. Under these circumstances, any possible confusion arising from the giving of the *Miranda* warnings provides no excuse for refusal. *Ford.* Consequently, the court of common pleas erred as a matter of law.

Accordingly, we reverse.

### ORDER

Now, May 25, 1983, the order of the Court of Common Pleas of Allegheny County in the above referenced matter, dated September 26, 1980 is hereby reversed.