## Commonwealth v. Kelly

*Glenn R. Davis*, assistant counsel, for Pennsylvania Department of Transportation.

*Henry F. Coyne*, for appellant.

BAYLEY, *J.*, August 14, 1984—This is an appeal from the Department of Transportation's suspension of the petitioner's operating privileges for a total of 24 months for a refusal to submit to two chemical tests of his breath as a result of two separate arrests for driving under the influence of alcohol on February 18, 1984.

The Vehicle Code, 75 Pa. C.S. §1547(a) provides:

"General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed."

On February 18, 1984, Officer Dennis Anthony of Lower Allen Township, Cumberland County, Pa., responded to an automobile accident where he discovered petitioner's truck which had struck a tree. The operator, petitioner Kelly, was present at the scene and the officer noticed an odor of alcohol on his breath. He administered some field sobriety

tests to Kelly which Kelly had difficulty completing. The officer placed petitioner under arrest for driving under the influence and sought his consent to take a breathalyzer test. Kelly was advised that his license would be suspended for a year upon refusal to take the test. He consented to take the test.

Kelly was transported to the Lower Allen police station and after undertaking pre-test procedures the test was commenced. After he had blown a sufficient amount of air into the machine to activate the testing device, he intentionally de-energized the unit by pulling out an electric plug. This action by Kelly terminated the test cycle and no valid reading could be made of the breath sample which was in the machine. Officer Anthony advised Kelly that his conduct in interfering with the test constituted a refusal to take a test. Kelly appeals from the suspension of his operating privileges as a result of this incident. It is his position before this court that he did not intentionally pull the electrical plug out of the machine.

Where a defendant, when taking a breathalyzer test, does not exert a total conscious effort to complete the test this is tantamount to a refusal to take the test which warrants the suspension of his operating privileges. Department of Transportation, Bureau of Traffic Safety v. Hanes, 49 Pa. Commw. 407, 411 A.2d 571 (1980). Even if a defendant does not verbally refuse to take the test the failure to make an honest effort to take it constitutes a refusal. Budd Appeal, 65 Pa. Commw. 314, 442 A.2d 404 (1982). Whether or not there has been a refusal by a motorist to submit to a breathalyzer test is a factual, not a legal determination. Budd Appeal, supra, citing Department of Transportation, Bureau of Traffic Safety v. Pedick, 44 Pa. Commw. 44, 403 A.2d 181 (1979).

The taking of a test requires an unequivocal assent which is not subject to debate, maneuver or negotiation. Department of Traffic Safety v. Guarino, 19 Pa. Commw. 104, 339 A.2d 861 (1975). I find as a fact that petitioner intentionally de-energized the machine with the purpose of invalidating the test. He was successful in doing so; however, this action on his part was a conscious effort to invalidate the test and as such constitutes a refusal which justifies the department's suspension of his operating privileges.

Following this test refusal, Officer Anthony transported petitioner back to his damaged vehicle which was located one and a half blocks from his home. Officer Vernon Wass, who had been in the police station during the above described incident, had left the station and was having a cup of coffee in a 7-11 Store from which vantage point he could observe petitioner's vehicle. After Officer Anthony had dropped petitioner off at his vehicle, with an ignition key in hand, Officer Wass observed the lights of that vehicle go on. When the vehicle started down the street, Officer Wass quickly followed and stopped it since, as he testified, he knew Kelly was under the influence of alcohol. Events started to recycle when Officer Wass arrested Kelly for driving under the influence.

Wass took Kelly back to the Lower Allen Police Station and asked his consent to take a breathalyzer test. Kelly consented after again being advised that his operating privileges would be suspended for a year if he refused to take the test. During the waiting period the officer noticed that Kelly had put a cigarette into his mouth and eaten part of it. The officer then made sure petitioner's mouth was clear and after a sufficient waiting period the test was commenced. Officer Wass testified that petitioner

was sucking on the mouth piece of the breathalyzer unit and giving very small pushes of air into it. He testified that he observed petitioner pull the mouth piece off the instrument at which point he advised Kelly that this constituted a refusal to take the test. The testing procedure was terminated and the Department of Transportation has suspended Kelly's operating privileges for one year as a result of this test refusal.

Petitioner testified at the hearing before this court that the breathalyzer unit had a very short stem and that he had to bend over to blow air into it. He indicated that while he was attempting to blow air into the unit he straightened up because his hand was swelling and his head, shoulders and knee hurt as a result of injuries he had received in the accident. He stated that when he tried to sit up the mouth piece came out of the tube but he did not intentionally pull it off. He noted that this was very easy to have happen. No additional testimony was offered by the Commonwealth to further explain how the mouth piece operates. The officers did confirm that petitioner had received some injuries in the accident.

Although Officer Wass was of the opinion that petitioner purposely removed the mouth piece, I find as a fact, based upon all of the evidence, that Kelly did not intentionally remove the mouth piece on the breathalyzer unit. Since petitioner had consented to the taking of the test the officer's refusal to continue the test does not justify, on these facts, the department's suspension of petitioner's operating privileges. At the time the efforts to take the test were terminated petitioner had consented to the test and his conduct was not tantamount to a refusal to take the test. Accordingly, the following order is entered

## ORDER OF COURT

And now, this August 14, 1984, the order of the Department of Transportation suspending the operating privileges of Eugene Kelly for a period of one year for a refusal to submit to a breathalyzer test as a result of his first arrest for driving under the influence on February 18, 1984, is sustained.

The order suspending his operating privileges for an additional period of one year for a refusal to submit to a breathalyzer test as a result of his second arrest for driving under the influence on February 18, 1984, is reversed.